1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK HARSHMAN,<br><br>            Plaintiff,<br><br>      v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>            Defendant. | Case No.  1:15-cv-00004-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 19, 21) |

## I.

## INTRODUCTION

Plaintiff Frank Harshman ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits and supplemental security income pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from major depressive disorder, anxiety disorder, diabetes, cardiomegaly, hypertension, hypothyroidism, hyperlipidemia, obesity, gastroesophageal reflux disease, dizziness, and pain in his knee and low back.  For the reasons set forth below, Plaintiff's Social

---

[1]  The parties have consented to the jurisdiction of the United States Magistrate Judge.  (See ECF Nos. 6, 7.)

1  Security appeal is denied.

2                                              **II.**

3                    **FACTUAL AND PROCEDURAL BACKGROUND**

4         Plaintiff filed the current Title II and Title XVI applications for supplemental security

5  income on September 15, 2011, alleging disability beginning on May 16, 2010.  (AR 216-229.)

6  On March 1, 2012, Plaintiff's applications were initially denied.  (AR 159-162.)  They were

7  denied upon reconsideration on August 13, 2012.  (AR 166-170.)  Plaintiff requested and

8  received a hearing before Administrative Law Judge Danny Pittman ("the ALJ").  On August 9,

9  2013, Plaintiff appeared at a hearing. (AR 25-52.)

10        On September 10, 2013, the ALJ denied Plaintiff's application for disability benefits and

11  application for supplemental security income.  (AR 11-19.)  Plaintiff appealed to the Appeals

12  Council.  (AR 5-7.)  On November 3, 2014, the Appeals Council denied Plaintiff's request for

13  review.  (AR 1-3.)

14        **A.      Hearing Testimony**

15        Plaintiff appeared pro se and testified at a hearing on August 9, 2013.  (AR 25-52.)

16  Plaintiff signed a waiver of representation form and testified at the beginning of the hearing that

17  he wanted to proceed with the hearing without a representative.  (AR 27-28; 213.)  Plaintiff

18  indicated that he had looked at the exhibits on his CD and that he did not have any objections to

19  those exhibits.  (AR 28.)  Plaintiff indicated that he thought two forms were missing from the

20  exhibits, but the ALJ indicated that they are in Exhibit 13F.  (AR 28.)

21        Plaintiff testified that he is 6 foot 4 inches and 320 pounds.  (AR 29.)  Plaintiff lives in an

22  upstairs apartment unit by himself.  (AR 30.)  Plaintiff has a driver's license, but he has not

23  driven in a couple of years and does not have a car.  (AR 30.)  Plaintiff normally takes the bus to

24  get around, but he walked to the hearing.  (AR 30.)  Plaintiff has his AA degree in computer

25  science.  (AR 31.)  He does not have any vocational training.  (AR 31.)  Plaintiff attended classes

26  for special needs kids his first couple of years of schooling.  (AR 31.)  Plaintiff is able to read

27  and write, but he was slow at it.  (AR 31.)

28        Plaintiff has not worked, including volunteer work, since May 16, 2010.  (AR 31.)  When

Plaintiff worked for TeleTech, he took calls over the phone for different companies in a telephone customer service job. (AR 32.) Plaintiff then worked for Administrative Resources, as an assistant manager for Easy Storage, a self-storage company. (AR 32, 46.) Plaintiff worked at Walmart for a few months as a seasonal cashier during the holidays for between 20 hours and 40 hours. (AR 32-33.) Plaintiff was sent to different jobs by Exact Staff, a temp agency. (AR 33.) One of the jobs that he was sent to was at a Jewish church. (AR 33.) After Plaintiff stopped working, he received unemployment. (AR 33.) Plaintiff testified that during the time that he was receiving unemployment he was actively looking for work and would have taken a job if someone offered him one. (AR 33.) Plaintiff testified that he went to local department stores, liquor stores, and gas stations. (AR 33.)

Plaintiff testified that he is unable to work primarily because of mental issues and because he has a hard time talking to people. (AR 34.) Plaintiff was treated at Fresno County Mental Health. (AR 34.) Plaintiff was briefly going through "ED" at Fresno County Mental Health, especially for his depression. (AR 36.) Plaintiff has never been hospitalized for mental issues. (AR 36.)

Plaintiff takes medication for diabetes and depression as well as Gabapentin and Ibuprofen. (AR 34.) Plaintiff stated that although he takes his diabetes medication, his sugar is still kind of high. (AR 34-35.) Plaintiff testified that the depression medication does and does not help his depression and he went downhill when he was taken off of it. (AR 35.) The ibuprofen helps Plaintiff's pain, but it's still there. (AR 35.) Plaintiff's medications make him dopey and one medication that he was on for depression made him unable to think. (AR 35.)

Plaintiff testified that he drinks alcohol once a year. (AR 36-37.) Plaintiff testified that in June 2011, he told Fresno County Mental Health that he drank wine coolers and smoked marijuana at one time. (AR 37.) Plaintiff just tried marijuana out. (AR 37.)

Plaintiff testified that his back pain is a burning sensation that radiates down his right leg to a little above the knee and that he had this pain for two or three years prior to the hearing. (AR 37-38.) Plaintiff's pain gets worse when he stands and walks and gets better when he lays down. (AR 38.) Plaintiff gets dizzy spells at least three times a week or if he gets up real fast.

1   (AR 38.)  When Plaintiff has a dizzy spell, he sits back down so that he does not fall.  (AR 38.)

2   No doctors recommended surgery on Plaintiff's back and he has not had injections in his

3   back.  (AR 35.)  Plaintiff has not done any physical therapy for his back.  (AR 35-36.)  Plaintiff

4   has a work belt for lifting that he received from work, but he has not used it in a long time.  (AR

5   36.)  Plaintiff sometimes uses a cane that he received from a friend.  (AR 36.)

6   When Plaintiff sits for too long his tailbone and the area of his back around the tailbone

7   start to flare up.  (AR 38-39.)  Plaintiff is able to sit for two hours before his back starts "feeling

8   bad," and three or four hours before it starts "really hurting."  (AR 39.)  Plaintiff is able to stand

9   for fifteen to twenty minutes before he has to sit down and he has to take four breaks when

10  walking for two blocks.  (AR 39.)  Plaintiff was not sure how much weight he could lift and

11  carry, but he is able to lift one twelve pack of soda okay, but two twelve packs start to hurt.  (AR

12  39.)  When Plaintiff drops something on the floor, he is able to pick it up, but sometimes not

13  right away.  (AR 39-40.)

14  Plaintiff has trouble with remembering things and he loses interest in things.  (AR 40.)

15  Plaintiff is able to follow a set of simple instructions and he does not have any problems making

16  decisions.  (AR 40-41.)  He tends to separate himself from people.  (AR 41.)  Plaintiff has panic

17  attacks if something is happening.  (AR 41.)

18  During a typical day, Plaintiff wakes up at 6 a.m., but does not get out of bed until around

19  8 a.m.  (AR 41-42.)  He then sits and watches TV, makes breakfast, watches TV again, pets his

20  cat, makes lunch, takes a shower, and watches more TV.  (AR 42.)  He falls asleep for

21  approximately a half hour or less during the day.  (AR 42.)  He likes to watch science fiction and

22  horror shows on TV.  (AR 42.)  Plaintiff falls asleep around 1:00 or 2:00 a.m. and he gets about

23  four hours of sleep per night.  (AR 42.)  Plaintiff is able to care of his own grooming, make his

24  own microwave meals, do his dishes, do his laundry, vacuum, take out the trash, pay his bills, go

25  grocery shopping, go to the movies once a month, go to bingo once a week at the place he lives,

26  use the computer, and plays with Legos.  (AR 42-44.)  Plaintiff takes care of, feeds, and changes

27  the litter box of his cat.  (AR 44.)

28  \ \ \

**B.      ALJ Findings**

The ALJ made the following findings of fact and conclusions of law:

- Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2014.

- Plaintiff has not engaged in substantial gainful activity since May 16, 2010, the alleged onset date.

- Plaintiff has the following severe impairments: history of diabetes mellitus, major depressive disorder, and anxiety disorder.

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

- Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels except that Plaintiff is limited to simple routine tasks in a non-public setting with occasional interaction with co-workers.

- Plaintiff is not capable of performing any past relevant work.

- Plaintiff was born on July 29, 1965, and was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability date.

- Plaintiff has at least a high school education and is able to communicate in English.

- Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not Plaintiff has transferable job skills.

- Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

- Plaintiff has not been under a disability, as defined in the Social Security Act, since May 16, 2010, through the date of the ALJ's decision.

(AR 11-19.)

\ \ \

**III.**

**LEGAL STANDARD**

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Sec. Admin, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner of Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)

1  (internal quotations and citations omitted).  "Substantial evidence is relevant evidence which,

2  considering the record as a whole, a reasonable person might accept as adequate to support a

3  conclusion."  Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of

4  Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

5  "[A] reviewing court must consider the entire record as a whole and may not affirm

6  simply by isolating a specific quantum of supporting evidence."  Hill, 698 F.3d at 1159 (quoting

7  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006).  However, it is not

8  this Court's function to second guess the ALJ's conclusions and substitute the court's judgment

9  for the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is

10  susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be

11  upheld.").

12  **IV.**

13  **DISCUSSION AND ANALYSIS**

14  Plaintiff raises three issues in this appeal.  Plaintiff argues that the ALJ erred by: (1)

15  failing to consider the interactive effect of Plaintiff's multiple "non-severe" impairments; (2)

16  failing to develop the record in light of Plaintiff being unrepresented; and (3) asking an

17  incomplete hypothetical question of the vocational expert ("VE").

18  **A.    Interactive Effect of Plaintiff's Multiple "Non-Severe" Impairments**

19  Plaintiff argues that the ALJ failed to consider the interactive effect of Plaintiff's

20  multiple non-severe impairments, including Plaintiff's knee and low back pain, hypertension,

21  cardiomegaly, symptoms of heart failure, hyperlipidemia, and obesity.  In particular, Plaintiff

22  argues that the ALJ should have evaluated how Plaintiff's obesity affected his other conditions.

23  Defendant concedes that the ALJ was obligated to consider the combined impact of all of

24  Plaintiff's impairments, both severe and non-severe, but argues that the ALJ did.  Further,

25  Defendant argues that Plaintiff does not point to any functional limitations that are greater than

26  the ones assessed by the ALJ.

27  In this case, the ALJ found that Plaintiff suffers from three severe impairments at step

28  two: diabetes mellitus, major depressive disorder, and anxiety disorder.  (AR 13-14.)  As

described above, at step two the ALJ is to consider the medical severity of the impairments to determine if they meet the durational requirements under the Act.   20 C.F.R. § 404.1520(a)(4)(ii).   A severe impairment is an impairment or combination of impairments that significantly limit the claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.152(c).  Basic work activities are the abilities and aptitudes necessary to do most jobs.  20 C.F.R. § 404.1521(b).  "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.' "  Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)).  Courts have found that step two is "a de minimis screening device [used] to dispose of groundless claims."  Webb, 433 F.3d at 687 (quoting S.S.R. No. 85–28 (1985); Smolen, 80 F.3d at 1290).

The Court finds that any error committed by the ALJ in failing to find that Plaintiff's non-severe impairments were severe at step two was harmless.  Adding Plaintiff's non-severe impairments as additional severe impairments at step two would have had no effect on the ultimate question of disability in this action in light of the ALJ's determination at step three and the ALJ's consideration of all of Plaintiff's symptoms at step four.  See Stout, 454 F.3d at 1054-55 (harmless error where mistake was non-prejudicial to the claimant or irrelevant to the disability conclusion); Crawford v. Colvin, No. 2:13-cv-2278-EFB, 2015 WL 1393231, at *3 (E.D. Cal. Mar. 25, 2015) (any error at step two harmless when the impairments were considered in assessing plaintiff's RFC).  Since Plaintiff "passed" the "de minimis screening device" at step two, any error by the ALJ in failing to include Plaintiff's non-severe impairments as severe impairments at step two was harmless.  Plaintiff could only have been prejudiced at step three, determination regarding listing impairment, or step four, residual functional capacity assessment.  See Burch, 400 F.3d at 682.

The ALJ did not err in concluding at step three that Plaintiff's impairments did not meet or equal a listing impairment, because obesity is not a separately listed impairment, so plaintiff could only meet the requirements "if there is an impairment that, in combination with obesity, meets the requirements of a listing."  SSR 02–01p (2002).  There was no evidence before the

1  ALJ, and none in the record, which states that Plaintiff's obesity limits his functioning.  Plaintiff

2  does not assert that he meets a particular listing in 20 CFR Part 404, Subpart P, Appendix 1, or

3  how he satisfies the requirements for such a listing for any combination of his impairments.

4  Therefore, the Court finds that Plaintiff has not shown that the ALJ's findings at step three were

5  made in error.

6       Similarly, Plaintiff fails to show that the ALJ erred in determining Plaintiff's RFC at step

7  four.  Plaintiff argues that the ALJ failed to consider Plaintiff's obesity and other non-severe

8  impairments, but Plaintiff does not point to any functional limitations in the record.  "The mere

9  existence of an impairment is insufficient proof of a disability" because the "claimant bears the

10  burden of proving that an impairment is disabling."  Matthews v. Shalala, 10 F.3d 678, 680 (9th

11  Cir. 1993).  The ALJ stated that he rendered his RFC determination "[a]fter careful consideration

12  of the entire record" and that he "considered all symptoms and the extent to which these

13  symptoms can reasonably be accepted as consistent with the objective medical evidence and

14  other evidence."  (AR 15.)  The ALJ found that Plaintiff has the residual functional capacity to

15  perform a full range of work at all exertional levels but is limited to simple routine tasks in a

16  non-public setting with occasional interaction with co-workers.  (AR 15.)

17       There are no treatment notes and no diagnoses in the record that addressed Plaintiff's

18  limitations due to obesity.  Also, as the ALJ noted, there are no medical opinions or evidence in

19  the record that reveal any limitations greater than the ones assessed by the ALJ.  (AR 16.)  The

20  ALJ gave significant weight to Dr. Samuel Rush, the consultative examiner, because his report

21  was consistent with treatment records and State Agency opinions.  (AR 16.)  Dr. Rush found that

22  Plaintiff had no range of motion abnormalities and Plaintiff's musculoskeletal examination was

23  normal.  (AR 14, 430-31.)  Dr. Rush did note that Plaintiff is overweight at 6 foot 3 inches and

24  308 pounds.  (AR 14, 429.)  Dr. Rush also found that Plaintiff has 5/5 motor strength in his upper

25  and lower extremities, has normal muscle bulk and tone, and is able to walk without difficulties,

26  including walking on his toes and heels.  (AR 14, 431-32.)  Based on Plaintiff's history and the

27  physical examination, Dr. Rush found that Plaintiff has no functional limitations.  (AR 14, 432.)

28       Therefore, the Court finds that there is substantial evidence supporting the ALJ's

1   determinations at steps two, three, and four; and Plaintiff's argument that the ALJ failed to

2   properly consider the interaction of Plaintiff's severe and non-severe impairments is without

3   merit.

4          **B.     Further Development of the Record**

5        Plaintiff contends that the ALJ had a duty to further develop the record, especially in light

6   of Plaintiff being unrepresented at the hearing.  Plaintiff argues that the ALJ should have ordered

7   a psychiatric consultative examination, considered the interactive impact of Plaintiff's obesity

8   and other non-severe impairments, and ensured that both favorable and unfavorable facts and

9   circumstances were elicited from the VE.  The court discussed Plaintiff's argument regarding the

10  interaction of all of Plaintiff's impairments in section IV.A. above, and therefore, does not repeat

11  that discussion here.  The ALJ properly developed the record regarding the interactive impact of

12  Plaintiff's obesity and other non-severe impairments.

13       The ALJ has an independent "duty to fully and fairly develop the record and to assure

14  that the claimant's interests are considered."  Widmark v. Barnhart, 454 F.3d 1063, 1068 (9th

15  Cir. 2006) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)).  The ALJ must be

16  especially diligent when the claimant is unrepresented.  McLeod v. Astrue, 640 F.3d 881, 885

17  (9th Cir. 2011).  "[W]here the claimant is not represented, it is incumbent upon the ALJ to

18  scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.  He

19  must be especially diligent in ensuring that favorable as well as unfavorable facts and

20  circumstances are elicited."  Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir. 1992) (quoting Cox

21  v. Califano, 587 F.2d 988, 991 (9th Cir. 1978)).  Further, the ALJ's duty to fully develop the

22  record is heightened where the claimant may be mentally disabled and, therefore, unable to

23  protect her own interests.  Higbee, 975 F.2d at 562.

24       1.    Mental Consultative Examination

25       Plaintiff argues that the ALJ erred by not sending him to a psychiatric consultative

26  examination.  Defendant counters that the record contains extensive longitudinal evidence of

27  Plaintiff's mental health treatment which was sufficient for the ALJ to determine the degree of

28  functional limitations.

1    The Commissioner has broad latitude in whether to order a consultative examination and

2 the government is not required to bear the expense for an examination of every claimant.  Reed

3 v. Massanari, 270 F.3d 838, 842 (9th Cir. 2001).   There are cases in which a consultative

4 examination would be required, "including those in which additional evidence needed is not

5 contained in the records of the claimant's medical sources, and those involving an ambiguity or

6 insufficiency in the evidence that must be resolved."  Reed, 270 F.3d at 842 (internal punctuation

7 and citations omitted).   A specific finding of ambiguity or inadequacy in the record is not

8 required to trigger the necessity to further develop the record where the record itself establishes

9 the ambiguity or inadequacy.  McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011).

10    Viewing the record as a whole, the Court finds that the ALJ did not err by rendering a

11 decision without ordering a consultative examination of Plaintiff's mental health.   The record

12 contains information about Plaintiff's medications, mental status examinations, and group and

13 individual therapy sessions.  (AR 377-423, 453-68.)  The record does not indicate that the ALJ or

14 any medical provider found that the evidence was insufficient to make a determination.   The

15 facts in this case are not similar to other instances in which the ALJ was found to have a duty to

16 further develop the record.  See Tonapetyan, 242 F.3d at 1150-51 (ALJ erred by relying on

17 testimony of physician who indicated more information was needed to make diagnosis);

18 McLeod, 640 F.3d at 887 (ALJ erred by failing to obtain disability determination from the

19 Veteran's Administration); Bonner v. Astrue, 725 F.Supp.2d 898, 901-902 (C.D. Cal. 2010)

20 (ALJ erred where failed to determine if claimants benefits were property terminated or should

21 have been resumed after his release from prison); Hilliard v. Barnhart, 442 F.Supp.2d 813, 818-

22 19 (N.D. Cal. 2006) (ALJ erred by failing to develop record where he relied on the opinion of a

23 physician who recognized he did not have sufficient information to make a diagnosis).

24    The ALJ did not determine that additional examination or information was needed to

25 make his decision; and it is not this Court's function to second guess the ALJ's conclusions and

26 substitute the court's judgment for the ALJ's.  Therefore, the Court finds that the ALJ did not err

27 by not ordering a psychiatric consultative examination for Plaintiff.

28 \ \ \

11

2.      Elicit Both Favorable and Unfavorable Testimony During the Hearing

Plaintiff also argues that the ALJ had a duty to ensure that favorable as well as unfavorable facts and circumstances were elicited from the VE during the hearing and that the ALJ was not especially diligent.  Defendant argues that the ALJ made sure that Plaintiff could understand the hearing, and specifically, the VE's testimony.

Plaintiff represented himself at the hearing before the ALJ.  Plaintiff signed a waiver of representation form and testified at the beginning of the hearing that he wanted to proceed with the hearing without a representative.  (AR 27-28; 213.)  At the beginning of the hearing, the ALJ explained the standards for disability under the Social Security Act to Plaintiff.  (AR 28-29.) The ALJ questioned Plaintiff about all of Plaintiff's impairments and limitations.  (AR 27-44.) After questioning Plaintiff, the ALJ gave Plaintiff the opportunity to make a statement.  (AR 44-45.)  The VE then testified.  (AR 45-51.)

Although Plaintiff argues that the ALJ was not especially diligent when it came to the VE's testimony, the record reveals that the ALJ did "develop the record fully and fairly and [ ] ensure[d] that the [Plaintiff's] interests [were] considered."  See Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (internal citations omitted).  At the start of the VE's testimony, the ALJ asked the VE to describe his qualifications.  (AR 45.)  Plaintiff stated that he did not have any objections to the VE's qualifications to testify.  (AR 45.)  The ALJ instructed the VE on which of Plaintiff's past jobs he should consider as Plaintiff's past work.  (AR 46.)  Plaintiff clarified his job as an assistant manager at the self-storage facility.  (AR 46.)  The VE then testified regarding whether a hypothetical individual with Plaintiff's age and education and Plaintiff's RFC could perform Plaintiff's past work and any other jobs in the national economy.  (AR 47-48.)  The VE provided DOT numbers in his response.  (AR 47-48.)   The ALJ explained what the DOT numbers represent and the purpose of the hypothetical questions.  (AR 48.)  The ALJ then asked more hypothetical questions of the VE.  (AR 48-50.)  The ALJ asked Plaintiff if he had any questions for the VE, but Plaintiff did not have any.  (AR 50.)   The ALJ offered Plaintiff an opportunity to make a statement before the close of the hearing, and Plaintiff stated that he had a stuttering problem. (AR 50-51).  The ALJ then asked the VE to consider whether stuttering

1   would be an issue for any of the jobs that the VE identified in response to the hypotheticals.  (AR
2   51.)

3          Therefore, the Court finds that the ALJ did attempt to elicit "favorable as well as
4   unfavorable facts and circumstances" to Plaintiff during the hearing, and specifically, during the
5   VE's testimony.   Furthermore, the Court finds that the ALJ did address any confusion that
6   Plaintiff may have had during the VE's testimony by explaining the DOT numbers and the
7   purpose of the hypothetical questions.   (AR 48.)   Accordingly, the Court finds that the ALJ
8   fulfilled his duty to develop the record.

9          **C.     Hypothetical Questions to the Vocational Expert**

10         Plaintiff argues that the ALJ did not ask the VE a hypothetical question that properly
11   encompassed all of Plaintiff's limitations, because the ALJ did not do the necessary evaluation of
12   the interactive effect of Plaintiff's severe and non-severe impairments when determining
13   Plaintiff's RFC.   Defendant argues that Plaintiff does not point to any evidence or opinions
14   which state that Plaintiff has greater limitations than the ones the ALJ found.   Defendant also
15   argues that the ALJ properly asked the VE hypothetical questions based on the RFC that the ALJ
16   found.

17         As discussed in section IV.A. above, there are no medical opinions or evidence in the
18   record that reveal any limitations greater than the ones assessed by the ALJ.   The ALJ found that
19   Plaintiff has the residual functional capacity to perform a full range of work at all exertional
20   levels but is limited to simple routine tasks in a non-public setting with occasional interaction
21   with co-workers.   (AR 15.)   The ALJ asked the VE hypothetical questions based on a
22   hypothetical individual with Plaintiff's age and education and Plaintiff's RFC.   (AR 47-48.)
23   Therefore, the ALJ asked the VE a hypothetical question that reflected all of Plaintiff's
24   limitations that are supported in the record.   See Valentine v. Commissioner of Social Sec.
25   Admin., 574 F.3d 685, 689 (9th Cir. 2009) (holding that an ALJ meets his burden at step five by
26   asking the VE a hypothetical question that incorporate the RFC determination).

27         Therefore, the Court finds that there is no indication that the hypothetical question
28   presented to the VE was incomplete.   Accordingly, the Court finds that the ALJ did not err in

relying upon the VE's testimony.

## V.

## ORDER

Based on the foregoing, the Court finds that the ALJ did not err in his multiple impairment analysis, developing the record, and asking the VE hypothetical questions.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Frank Harshman.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **May 20, 2016**

UNITED STATES MAGISTRATE JUDGE